Good afternoon, Your Honors. Elizabeth Baroque for Mr. Ellis. I want to start with the standing issue. There was an issue raised regarding whether Mr. Ellis had standing to bring the action based primarily upon the fact that the property has been sold from Mr. Roohani to another party and there was not a stay pending appeal that was filed. In regard to that, I think it's different than a normal just sale of the property. What we're dealing with is a cause for a violation of the automatic stay. The standing issue and the mootness issue are basically the same issue, is that right? Yes. In this case, what it is, it's a violation of the stay which holds its own remedies, which are actual impunitive damages, as well as if the stay was determined to be in effect. If a stay had been placed pending the appeal, then there would be a remedy of obtaining the property back as all the orders or actions would be void. But in this case, there is at least the fact that there is the remedy of damages, actual impunitive damages, which can be brought. And that's held by the party personally, who is the debtor and not the estate. So he does have standing and the issues are not moot. In regard to whether the automatic stay should have been annulled, that was brought by... Well, wait a minute. The BAP held that it was moot, right? I believe that the BAP dismissed on the issue of standing. I'm not sure of all the facts and whether it was based primarily on the fact that there wasn't a stay pending appeal, but clearly... It would be helpful if you knew the opinion, but yes, it was on the ground that there was no stay pending appeal. Ordinarily, as I understand it in bankruptcy, if there's no stay pending appeal and property is sold, there is no recourse at that point. The case is moot. That would be true if it were a situation where it was just, say, the estate selling property or a party selling someone's property. That's true. But this is a case where it was a violation of the stay. The right to damages comes from that violation of the stay, not necessarily just the sale. So it's a different issue. And that violation of the stay and the damage claim that comes from that is not mooted. So say, for example, you had... In this case, it's really bizarre because of the retroactive stay. But suppose you didn't have a retroactive stay. What you had was somebody who comes in and says, I want a lift of the stay so I can sell some property. And the bankruptcy judge says, okay, fine. And meanwhile, an appeal is taken because the debtor says, you shouldn't have lifted the stay and you shouldn't have let the property be sold. Right. My understanding is that unless the debtor gets a stay of the stay, the stay of a lift of the stay, that if the property is then sold, he doesn't have recourse. Is that wrong? No, that is correct. All right. How is this different? This is different in that no party went in and obtained relief from stay to sell the property. But that's what... But what did happen, and this is... is that a determination was made retroactively lifting the stay. So the state of affairs at the time of the determination in the bankruptcy court, why it wasn't not directly equivalent to the situation where a stay is lifted, you know, on time instead of retroactively. Still, in terms of any future sale, because we're dealing here with a situation where there was another sale. With regard to the other sale, another sale. Right. Why isn't that equivalent to the ordinary situation? To the other sale? I agree it is. It is... There's no claim against... The debtor or Mr. Ellis can't get his property back. I agree with you on that. He didn't obtain a stay pending appeal. That's true. But what he does have is his claim for damages. You're saying that the original person who originally sold it without a stay, if you were to get a reversal... Correct. You would then have... The stay would be back, and the fact that it was sold without the stay would be back, and you could get damages. Correct. Exactly. So in that regard, the debtor does have standing to bring this. In regard to the annulment of the stay, essentially what the court has to rely on is the balancing of the equities, which is set forth in Felstad, which is in our briefing. It basically comes down to whether the creditor was aware of the bankruptcy and whether the debtor engaged in unreasonable or inequitable conduct. If you look back at the facts, it looks like, or it is, essentially Ms. Eskineau, who owned the property prior to the bankruptcy filing, was having problems paying her mortgage or what have you, and there appears to be some predatory lending from Mr. Sass, who was the owner of Unlimited Holdings. Let me just back up a minute. Felstad's a bad case. It's not our case. Has the Ninth Circuit ever held that a retroactive lifting of the stay is appropriate ever? It sort of muttered about it, but has it ever held it? I believe so. I couldn't cite either case, but I believe there are circumstances where retroactive annulment of the stay is appropriate. I don't think this is one of those circumstances. But you understand that the BAP rulings are not binding on us. So when you say, for example, the BAP's test for discretion in annulment is Felstad, that's not true. We would have to start from scratch in determining what the standards are, whether you could argue. I would think that the district court would then take its clues from the Felstad case. I don't know that there is a case. We have to decide a case, so we have to decide what the factors are. We would have to re-think this thing through from the beginning. Right. In that regard, I believe the factors would still apply. Those would be the factors you would urge this Court to adopt treating the bankruptcy appellate panel's views as persuasive, as not binding. Is that your point? No, Your Honor. Looking at the cases in Phoenix Bond, it's a Ninth Circuit case. The circuit-held annulment of the stay was only justified under extreme circumstances. So I guess that would be a more difficult circumstance to satisfy. I think the Felstad factors are somewhat helpful in determining what extreme circumstances may be. I think if you look at the facts in regard to Mr. Sass owning unlimited holdings, Mr. Sass representing to the owner of the property that Mr. Rouhani wanted to purchase the property or the party could take out another loan, the fact that she chose to take out a loan and was told that the interest was paid for a year, and within a month's time they said, no, you have to pay. You're $5,000 in arrears now, and we're going to foreclose. The fact that unlimited holdings foreclosed on the property and then almost immediately sold it to Mr. Rouhani. The fact that Mr. Rouhani testified that he would be damaged if he didn't get the property because he had bought the surrounding property, so this one piece of property would make all his other properties more valuable. Given those facts, I think it's clear that Mr. Rouhani knew of the bankruptcy also. Unlimited holdings clearly knew of the bankruptcy filing. I think the violation of the stay was willful. Not only did the unlimited holdings would be held to violating the stay simply by the fact that the bankruptcy was filed, but also willfully because they knew that the bankruptcy was filed. Do you think if we were to conclude that the case wasn't moved, would we decide this issue at all, or would we simply suggest that you go back to the back, which didn't decide it in the first place, and have them decide in the first instance? I think the Ninth Circuit certainly could decide, and could decide using the exceptional circumstances case law regarding that. All the facts are before the Ninth Circuit, so I think it would be appropriate not to mention the fact that although the appeal was brought to the BAP, parties do have a right to forego the BAP and bring an appeal directly to the Ninth Circuit. If you meet whatever the standards are, which you did try to do earlier. So it would seem sort of appropriate if we thought they were wrong on this procedural question to go back and let them look at it in the first place. Which would be okay also. Okay, thank you. Cancel. Time's expired. What's wrong with her mootness analysis? Well, Your Honor, first of all, it's factually incorrect. I point to the court to the fact that in the state court case that Mr. Ellis commenced, there was a specific finding by Judge Tagliati that Mr. Rahani was a bona fide purchaser for value who did not have notice of the stay. That was a specific finding based on an admission by Mr. Ellis. I assume it wouldn't be him that she'd be looking for the damages from. It would be the entity whose name I'm now forgetting who sold it to him. Fred Sass and his entities, Your Honor. Sorry? Fred Sass was the lender, the individual lender through his company Unlimited Holdings that lent money to Ms. Escondo. And then Unlimited Holdings foreclosed, got a hold of the property and transferred it to Mr. Rahani? And sold it for $800,000, Your Honor. To Mr. Rahani? Yes. All right. And so counsel for Mr. Ellis is arguing, is conceding that she can't do anything against Mr. Rahani. She can't go for the property. But she can sue your clients for damages. Well, I only represent Mr. Rahani, Your Honor. No, I understand that. That's what she can sue is your clients. Who isn't she? Who she does not want to sue. She wants to sue Mr. Sass and his entities. Well, she certainly had the ability to do that. In fact, you know, she convinced, or Ms. Escondo and Mr. Ellis, in the Judicial District Court for the State of Nevada, in which they brought up all these issues. So your answer to her analysis is that she has the wrong people in this lawsuit? Absolutely. My client had absolutely no relationship with Ms. Escondo or Mr. Ellis. My client bought the property from the lender who was held there a month earlier. So you're only Mr. Rahani? Yes. Nobody else is in the case? I don't believe any other parties are party to the appeal, Your Honor. Okay. Again, the state court action in which Unlimited Holdings had been named, that case has been litigated to conclusion. After we obtained an order annulling the automatic stay, we continued that state court litigation. Initially, Mr. Rahani didn't – So basically your position is that a reversal of the annulment of the stay wouldn't affect her rights vis-à-vis your client? I beg your pardon, Your Honor? Wouldn't affect her rights vis-à-vis your client because your client couldn't be held in damages? My client cannot be held in damages, Your Honor. There's no relationship whatsoever between Mr. Rahani and these parties. But would – at the same time, if the annulment of the stay were annulled and we were back to stay, then the sale would have been void and your client should never have gotten the property. Theoretically, Your Honor, yes. But as a practical matter, I don't think we can unwind this deal. There have been a number of events that have taken place since that stay was annulled, the most important of which is that we have a final, unappealed state court judgment quieting title to this property, initially my client, and altering a number of recorded instruments, public records of Clark County, Nevada. You just can't undo that, Your Honor, by reversing the earlier decision. I mean, you have this strange circumstance where two different back panels took completely opposite views of this, and that gives one some pause. What did the first back panel say? They said it wasn't moved because – Well, we had the motion panel consider the issue initially. But at some length – I tried very, very hard to get them to understand our position on the mootness issue, and they came back and said, you know, we're not going to make the decision on the motion. Go ahead and raise the issue in your – Well, they did make the decision. They denied it without prejudice. Well, yes, but they denied it. I mean, they expressed a view, an understanding, an analysis. Yes. Obviously, we would disagree with that. And then when the merits panel considered the case, obviously they ruled in our favor on the issue. But neither of them exactly dealt with this oddity about this state that can just pop back into place with the result of voiding the sale. In other words, if we were to think it wasn't moved and we were to reverse, the sale to your client would become void and she would get the property back, theoretically, no? Well, let's think about that. How would we go about accomplishing that? I mean, I have now a final state court judgment quite entitled in the name of Mr. Rouhani. Suppose we were to go back and this court reversed the decision of the bankruptcy court. I don't know how you do that, but suppose you did. How would the bankruptcy court go about avoiding a final state court judgment that had been entered after the state had been terminated? That's a basic Rooker-Feldman issue, I would submit, Your Honor. The federal court can't go in and tell a state court that has issued a final judgment that it's wrong. No, but a litigant could go into state court and say under a state procedure similar to Rule 60, the judgment in this case was predicated on an assumption that no longer controls. Correct, Your Honor. They would have a hard time doing that in this case, Your Honor, because of one of the rulings by the state court in that final judgment. And if I could refer you to it, it appears at page – the order is at page 370, Your Honor. This is something that we did raise with the appellate panel, but we did not have an opportunity to bring specifically to your attention, but given the limits on the length of our brief. This is extremely significant. There was a notice of lis pendens that was recorded against the property when Mr. Ellis filed his state court quiet title act. Part of the judgment that was issued by the state court and not appealed expunged that notice of lis pendens. And under Nevada law, when you have a lis pendens that's expunged, by operation of law, any subsequent transferee becomes a bona fide purchaser. That person would take free and clear of any other claims. So there's no way to unwind this deal with respect to any subsequent transferees. And again, my client had no relationship with the appellants in this matter. But that's basically what happened the first time. I mean, what happened the first time was it was sold to your party as a third party bona fide purchaser, but the sale was declared void because it was in violation of the state. Correct. So it was just not a good sale, even though it was a good sale for every other purpose at that point. I mean, it would have been if it hadn't been for that. Right. And we fixed that. We went back to the bankruptcy court and said we weren't aware of the state. I understand that, but why is the current situation different? The fact that you have a quiet title action in the state court, what difference does it make? The fact is that if we were to reverse the annulment, then we would be, everything would pop back to where it was at that point. Why not? Well, you can't just reverse and have the state pop back. But we did it the first time is what I'm pointing at. We didn't do it the first time. The bankruptcy court did it the first time. The case had been, there was a valid sale to your client, but it wasn't any good. And you're asking what would happen? Couldn't we just do the same thing again? Except for the fact that he's now sold it. That may be the difference. Well, obviously, that's the most critical factor. There's been a very significant change of circumstance, both the sale to Richmond American Homes, and as importantly, we have the final state court judgment that was. . . I don't understand the significance of that. You could have had it the first time, too. Would the first case have been different if you had gone running into state court and gotten a quiet title action before the determination that the sale was void? Couldn't have been. Well, Your Honor, if they had obtained a state pending appeal of the bankruptcy court. . . They didn't the first time either. As far as I can tell, I mean, this may be a pointless conversation because the sale to the third party may be determinative. But aside from the sale to the third party, I don't see what's different now than it was then. Well, certainly the sale to the third party is the most significant factor, Your Honor. Part of being a bona fide purchaser for value is, I assume, purchasing in ignorance of the automatic stay. Yes. That's established, is it not? That was established in the state court action, Your Honor. The state court specifically found that Mr. Rahoney was a bona fide purchaser who did not have knowledge of the bankruptcy stay. Okay. Anything else? Thank you. I'd like to ask a question somewhat irregularly, which is why he isn't right about the fact that you have the wrong defendant here. Well, first of all, Mr. Rahoney is the party that brought the motion to annul the stay. I understand that. But in terms of whether you are fairly convincing in saying that you can't get the property back, but you can get damages. But could you get damages against Mr. Rahoney? Well, I think you could. But the fact that if you annul the stay and it goes back, the transfer. But he wouldn't be the person who violated the stay. No, but he would be a party to that stay action. He may be a party who is also responsible for damages as a result of that action. Doesn't his status as a person? I mean, the predicate for damages, and particularly for punitive damages, would be acting in knowing violation of the stay. And doesn't his finding that he's a bona fide purchaser necessarily include the finding that he didn't know about the stay at the time he acquired the property? Well, just for clarification, in regard to violation of the stay, you don't have to know that you violated the stay. You just have to have violated the stay, which means if that bankruptcy was filed and you took an action that was in violation, you violated it. That goes to actual damages. Punitive damages may be determined more on a willfulness basis, which doesn't even necessarily have to do with bad acts. It has to do with just a knowledge of the bankruptcy. So in that regard, I don't think it makes any difference. In regard to a determination that he's a bona fide purchaser, I think that was determined in the summary judgment, which was granted in favor of Mr. Ellis, which was ultimately overturned after the stay was annulled. So I don't know how much credence can be put into that determination at this point. And I think that is also an issue that would be raised and determined and litigated in regard to a stay violation action. Okay. Thank you very much. The case of Ellis, Henry Ellis, is submitted.
judges: Berzon, Ikuta, Singleton